673 So.2d 1268 (1996)
Leona C. MOORE
v.
KLLM, INC.
No. 96-CA-38.
Court of Appeal of Louisiana, Fifth Circuit.
April 30, 1996.
*1269 J. Paul Demarest, Angela C. Imbornone, Michelle R. Demarest, Favret, Demarest, Russo and Lutkewitte, New Orleans, for Plaintiff/Appellant.
Douglas K. Williams, Cullen J. Dupuy, Trenton J. Oubre, Breazeale, Sachse & Wilson, Baton Rouge, for Defendant/Appellee.
Before GAUDIN, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This is a suit for workers' compensation benefits filed by Leona Moore against her employer, KLLM Transport Group, Inc. (KLLM). The matter was dismissed without prejudice by a ruling of the trial court maintaining a defense exception to subject matter jurisdiction. Claimant appeals. We reverse.
Leona Moore was hired by KLLM as a long haul trucker in September, 1993. Ms. Moore is a resident of Louisiana and executed the contract of employment at KLLM's terminal in Baton Rouge, Louisiana. KLLM is a Texas Corporation with its principal place of business in Jackson, Mississippi. The accident which caused the injury occurred in California while the claimant was performing duties within the course and scope of her employment. According to the record, Ms. Moore slipped as she attempted to exit the truck at a truck stop in Ontario, California on May 1, 1994. The truck had been cleaned and armoralled at a KLLM terminal. Claimant immediately reported the incident to Jeffery Schmitz, the safety director for KLLM.
The company reported the claim to the Mississippi Workers' Compensation Commission and began making voluntary payments pursuant to Mississippi Law. Claimant received and accepted the benefits until she was fired for failure to return to work after she was released from medical care.
Subsequently, claimant filed a contested claim for benefits in Louisiana on April 18, 1995. KLLM filed an exception of lack of subject matter jurisdiction based on the terms of the employment contract. After a hearing by the Louisiana Office of Workers' Compensation, the matter was dismissed without prejudice. It is that judgment which forms the basis of claimant's appeal.
In support of the exception, KLLM introduced a document signed by the parties entitled, AGREEMENT TO SELECT THE STATE OF MISSISSIPPI AS THE STATE OF EXCLUSIVE REMEDY FOR WORKER'S COMPENSATION COVERAGE. That document contains the following clauses:
Completion of this form is voluntary and will expedite processing of information requested necessary for proper determination of Mississippi jurisdiction in this matter.
The parties to this agreement represent to the Bureau of Workers' Compensation that there is possibility of conflict with respect to the application of the Workers' Compensation Laws because the contract of employment is entered into and all or some portion of the work is, or is to be, performed in different states, which states appear below opposite the employees' names.
Therefore, in view of the foregoing and pursuant to the provisions of R.C. Section 4123.54, the employer and said employees mutually agree to be bound by the Worker's Compensation Law of the State of Mississippi; and it is mutually agreed that the employees shall be entitled to compensation benefits regardless of where the injury occurred or where the disease was contracted, and the rights of the employee(s) and his, her or their dependants under the laws of the State of Mississippi shall be the exclusive remedy against the employer on account of injury, disease or death in the course of an (sic) arising out of employment.
*1270 KLLM also introduced an affidavit executed by Scott Sanders, a claims manager for the company who is familiar with the claim made by Ms. Moore. Mr. Sanders stated that Ms. Moore was employed by KLLM as a long haul A-team driver at the time of the accident. KLLM is a Texas corporation with its principal place of business in Jackson, Mississippi and it is from that office that Ms. Moore's paychecks were issued and her workers' compensation benefits paid. Mr. Sanders further attested to the fact that Ms. Moore's injury was reported by KLLM to the Mississippi Worker's Compensation Commission, which notified Ms. Moore that it would administer her claim; and that KLLM made voluntary payments of benefits to Ms. Moore in accordance with Mississippi law.
Also reviewed by the trial court was an affidavit submitted from Bailey Kimble, a dispatcher employed by KLLM, who stated that he was familiar with the work performed by Ms. Moore while she was employed by KLLM. Mr. Kimble's affidavit establishes that Ms. Moore picked up and delivered loads throughout the United States and at least 90% of her work was performed outside of the State of Louisiana. Further, decisions regarding dispatching and routing of trucks driven by Ms. Moore were made in Jackson, Mississippi, and those decisions were communicated to her through a satellite system based in San Diego, California. Ms. Moore can receive the dispatched information either by way of a computer located in her truck, or by accessing a voice mail system located in Jackson, Mississippi. Finally, Mr. Kimble stated that the truck driven by Ms. Moore was registered in Texas.
KLLM offered into evidence the completed claim form dated May 3, 1994, which reports the injury to the Mississippi Workers' Compensation Commission. The record also contains a letter written by the Mississippi Commission dated May 13, 1994, accepting the responsibility for administration of the claim. There is no evidence in the record from which to determine the amount of benefits paid, or the reason for, and date of their termination.
Claimant offered an affidavit in which she verifies that she was employed by KLLM as a truck driver since her hire in Baton Rouge on September 30, 1993. She states that she never intended to sign an agreement to accept compensation benefits in the State of Mississippi, and she never intended to waive her right to compensation benefits to which she was entitled in Louisiana. She further asserts that, at no time did she understand she was waiving her right to such compensation.
Louisiana has enacted a new set of conflict-of-law provisions embodied in LSA-C.C. arts 3515 et. seq, which became effective on January 1, 1992 and are, therefore, applicable to this matter. Article 3515 provides the general and residual rules to be applied to all types of cases. It provides as follows:
Article 3515. Determination of the applicable law; general and residual rule
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Additionally, in Title VI entitled "Conventional Obligations", article 3537 provides the general rule. It reads as follows:

Article 3537. General rule
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and *1271 performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Article 3540 allows the parties freedom to chose the applicable state law by contract. It provides:

Article 3540. Party autonomy
All other issues of conventional obligations (besides form and capacity) are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.
Defendant, KLLM, argues that the above cited article permits the election of Mississippi Workers' Compensation Law in the contract for hire as the exclusive remedy for work related injuries. KLLM argues further that the contract is a Mississippi contract for hire. Under the rule in article 3540, Mississippi is the law "expressly chosen" by the parties, and it will govern unless it contravenes the public policy of the state whose law "would otherwise be applicable". See; Cherokee Pump & Equipment, Inc. v. Aurora Pump, 38 F.3d 246 (5th Cir.1994).
However, for a complete analysis, we must consider that this contract is an employment contract and concerns issues of workers' compensation. Thus, we find articles 3542 and 3544 also pertinent. Article 3542 provides:

Article 3542. General rule
Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.
Article 3544. Issues of loss distribution and financial protection
Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
(1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.
(2) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state; and (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred, provided that (i) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that state, and (iii) the law of that state provided for a higher standard of financial protection for the injured person than did the law of the state in which the injurious conduct occurred.
Our workers' compensation law contains R.S. 23:1035.1 which provides that an employee, who is injured while working outside of the state, shall be entitled to Louisiana compensation benefits "provided that at the time of such injury (a) his employment is principally localized in this state, or, (b) he is *1272 working under a contract of hire made in this state".
As previously stated, KLLM argues in brief that the employment contract is a Mississippi contract because claimant's employment was not principally localized in Louisiana, nor was she working under a contract of hire made in Louisiana. While we find defendant's arguments that the employment was not principally localized in Louisiana convincing, we do not agree that the contract for hire is a Mississippi contract.
In determining whether a contract should be regarded as a Louisiana contract or that of another state in worker's compensation cases, the parties' intent should be paramount. Chance v. Fidelity & Casualty Company of New York, 509 So.2d 593 (La. App.3d Cir.1987); Lakvold v. Stevens Transport 95-866 (La.App. 1 Cir. 12/15/95) 665 So.2d 828. Some of the factors to be considered in determining the parties' intent include the domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Milligan v. Glenburney Nursing Home, 408 So.2d 40 (La.App.3d Cir.1981); Lakvold v. Stevens Transport, supra.
In the instant case the employment was initiated in Louisiana at the defendant's Baton Rouge terminal. A formal, written contract between the claimant, a Louisiana resident, and a foreign corporation with a facility in Louisiana, was executed in Louisiana. The contract was negotiated for and entered into by KLLM through its authorized agents in Louisiana. There is no evidence that approval from any out-of-state source was needed for the hiring. It is unnecessary to probe further into the intent of the parties. We conclude that a Louisiana contract for hire exists between the parties.
We must now decide whether the clause in the contract for hire, which makes Mississippi workers' compensation benefits the exclusive remedy for a compensable injury, is in contravention of Louisiana's public policy. In order to make that determination, we must look further into our law. LSA-R.S. 23:1033 provides that, "(n)o contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided". We find further guidance in the revision comments contained in Title VII of the conflict of laws articles. The comment following article 3543 in pertinent part states: "a state's loss-distribution policy may or may not extend to non-domiciliaries acting within its territory, but does extend to domiciliaries even when they act outside the state." The reasoning for this distinction is clear. The well-being of an injured, disabled employee becomes the concern of society in the state in which that worker is domiciled. A domiciliary of Louisiana who is unable to work and must avail himself of the services offered will use Louisiana resources.
Based on this analysis, we find the clause in the contract restricting Louisiana's extraterritorial jurisdiction in a Louisiana contract for hire to be in contravention of Louisiana public policy. Consequently, we find that the trial court improperly maintained the exception of lack of subject matter jurisdiction. Accordingly, we reverse that ruling, reinstate the claimant's case and remand for further proceedings.
REVERSED AND REMANDED.